UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARTIN BOUCHARD,

         Plaintiff,

  v.                8:06-cv-418

CLINTON COUNTY, NEW YORK,
and JANET DUPREY, in her
Individual Capacity and in her
Official Capacity as Clinton County Treasurer,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Martin Bouchard commenced the instant action pursuant to 42 U.S.C. § 1983 claiming violations of his constitutional rights arising out of Defendants' foreclosure of his property for failure to timely pay taxes. Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12 for lack of subject matter jurisdiction.

**I. FACTS**

The following facts are taken from Plaintiff's Complaint and, for purposes of this motion, assumed to be true. Plaintiff owns a certain piece of property in Clinton County, New York. He has owned the property since 1998. Plaintiff allegedly owed back taxes on the property. Plaintiff thought that his bank was responsible for paying the taxes because Plaintiff pays the taxes to the bank in escrow. In 2003, Plaintiff received a tax bill and,

therefore, paid the tax.  The Town of Chazy returned Plaintiff's payment because the bank had already paid the tax.

As of October 2004, Plaintiff assumed that his taxes were paid.  From October through early December 2004, Plaintiff temporarily resided in Ithaca, New York.  On or about the last week of October 2004, Plaintiff found two notices in his mail for certified mail from the United States Postal Service.  Plaintiff went to the post office to claim the letter.  A post office representative informed Plaintiff that the letter had already been returned to the sender and that she would not or could not tell Plaintiff who sent the letter.  The certified letter was returned to Defendants as "unclaimed."  Defendants made no further attempts to provide actual notice to Plaintiff of the tax foreclosure proceeding.

Plaintiff claims that he received no tax bill from Clinton County for at least two years before October 2004.  See Compl. at ¶ 35.  The Court cannot accept this factual assertion as true because it directly contradicts paragraph 23 of the Complaint which states that "[i]n 2003, Mr. Bouchard paid the Town of Chazy some property taxes on this property because a tax bill came to him."

On February 23, 2005, Defendants entered an order of default judgment against Plaintiff with the Clinton County Clerk.  The order was signed by County Judge Patrick McGill on February 15, 2005.  Plaintiff received no notice from Clinton County that his property had been taken by default.  Defendants did not attempt to serve the default judgment upon Plaintiff.

In May 2005, Plaintiff saw a brochure indicating that his property was to be sold at an auction.  Plaintiff then went to the County Clerk to pay his back taxes.  Defendant Janet

Duprey informed Plaintiff that it was too late to pay any arrears in taxes and that the County now owned the property. Plaintiff claims he remains willing to pay the back taxes.

Plaintiff then moved the County Court to vacate and reopen the proceedings pursuant to New York Real Property Tax Law § 1131. The County Court granted this motion. On appeal, however, the Appellate Division reversed, finding that: (1) Plaintiff's motion to vacate was untimely; and (2) Plaintiff's due process claims were without merit. In re Bouchard, 810 N.Y.S.2d 565 (3d Dep't 2006).

Plaintiff then commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that he was deprived of his property without due process of law because Defendants did not provide him with adequate notice of the foreclosure proceeding against him. Plaintiff also requests a declaration that N.Y. Real Property Law § 1125 is unconstitutional because the law does not require a signed certified mail receipt from the property owner as part of the certified mailing. Plaintiff also seeks a declaration that Real Property Tax Law § 1131 is unconstitutional because it only provides for thirty days to vacate a default judgment, but Defendants were not required to serve Plaintiff with a copy of the default judgment.

Defendants now move to dismiss on the ground that the Court lacks subject matter jurisdiction pursuant to the Tax Injunction Act and that the Complaint fails to state a claim because Defendants sent Plaintiff constitutionally adequate notice.

## II.   DISCUSSION

### a.   Tax Injunction Act

The first issue presented is whether the Tax Injunction Act, 28 U.S.C. § 1341, deprives this Court of subject matter jurisdiction. The Tax Injunction Act ("TIA") provides "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of

any tax under state law" provided there is available a "plain, speedy and efficient remedy" in state court. 28 U.S.C. § 1341. A state provides an adequate remedy if there is an avenue available for a full hearing and judicial determination at which the party may raise its claims.

Plaintiff contends that the TIA is inapplicable because he is neither contesting the amount or manner of assessing property taxes, but only challenging Defendants' having taken his property without adequate notice. In support of this contention, Plaintiff relies on Hibbs v. Winn, 542 U.S. 88 (2004); Wells v. Malloy, 510 F.2d 74, 77 (2d Cir. 1975); Felton v. Icon Properties, 2004 U.S. Dist. LEXIS 21413 (E.D. La. 2004), Ciocca v. Clinton County, 1999 U.S. Dist. LEXIS 22401 (N.D.N.Y. 1999), and a series of other tax-related cases in this Circuit where the issue of the TIA was not addressed.

Hibbs v. Winn involved a challenge to the constitutionality of an Arizona statute permitting tax credits for contributions supporting parochial schools. Hibbs did not involve a state's efforts to assess and collect taxes. As such, the facts in Hibbs are inapposite to those presented here. However, Hibbs's teachings are instructive. In Hibbs, the Supreme Court recognized that Congress "directed taxpayers to pursue refund suits instead of attempting to restrain collections." 124 S. Ct. at 2286-87. The Supreme Court also pointed out that "§ 1341 proscribes interference . . . with those aspects of state tax regimes that are needed to produce revenue - *i.e.*, assessment, levy, and collection." Id. at 2288 n.7 (emphasis added). Significantly, the Supreme Court approvingly quoted the following excerpt from the Second Circuit's opinion in Wells v. Malloy: "'The [TIA's] context and the legislative history lead us to conclude that, in speaking of 'collection,' Congress was referring to methods similar to assessment and levy, *e.g.*, distress or execution. . . .'" Hibbs, 124 S. Ct. 2290. "Distress" is "[t]he seizure of another's property to secure the performance of a duty, such as the payment

of overdue rent" or "[t]he legal remedy authorizing such a seizure; the procedure by which a seizure is carried out." BLACK'S LAW DICTIONARY 508 (8th ed. 2004); see also G. M. Leasing Corp. v. U. S., 429 U.S. 338, 354, 97 S. Ct. 619 (1977) ("[T]the First Congress, which proposed the adoption of the Bill of Rights, also provided that certain taxes could be 'levied by distress and sale of goods of the person or persons refusing or neglecting to pay.'") (quoting Act of Mar. 3, 1791, c. 15, s 23, 1 Stat. 204); Palmer v. McMahon, 133 U.S. 660, 669, 10 S. Ct. 324 (1890) ("Collection by distress and seizure of person is of very ancient date."); Yazoo & M.V.R. Co. v. Thomas, 132 U.S. 174, 10 S. Ct. 68, 70 (1889) (noting a procedure whereby "the auditor shall collect the taxes due the state by distress warrants, issued to any sheriff, authorizing the seizure and sale of personal property in the county."). Because, as evidenced by the above-cited cases and as will be discussed more fully, a tax foreclosure is a form of distress, it is clear that a tax foreclosure proceeding falls squarely within the TIA. See Andresakis v. State of Conn., 122 F.3d 1055, 1997 WL 383456, at *2 (2d Cir. 1997) (Table).

Plaintiff also relies on the Second Circuit case of Wells v. Malloy. The plaintiff in Wells failed to pay taxes due under the Vermont Motor Vehicle Purchase and Use Tax. As a consequence, the Commissioner of Motor Vehicles suspended the plaintiff's driver's license. The plaintiff sued in federal court claiming that "the classification of motor vehicle operators on the basis of their liability for payment of a purchase and use tax violated the Equal Protection Clause. . . ." Wells, 510 F.2d at 76. The Second Circuit held that the plaintiff's lawsuit did not fall within the ambit of the TIA because the plaintiff was not seeking to restrain the assessment or levy of a tax under state law. Id. at 77. Although the State of Vermont argued that the suspension of a driver's license constituted a form of tax collection, the

Second Circuit concluded that, although a suspension might help the state produce some money, the suspension was too far attenuated from the tax to constitute a collection within the meaning of the TIA. The Second Circuit wrote that "in speaking of 'collection', Congress was referring to methods similar to assessment and levy, *e.g.*, distress or execution . . . that would produce money or other property directly, rather than indirectly through a more general use of coercive power." Id.

Here, by contrast, the in rem tax foreclosure procedure is not the exercise of an indirect coercive power, but a direct means by which the state can produce money or property in satisfaction of taxes owed. Under New York law, a tax foreclosure is a direct attempt to collect taxes. See Kennedy v. Mossafa, 100 N.Y.2d 1, 10-11 (2003) ("While to an owner who has not abandoned his or her property, learning of its foreclosure is distressing-particularly when the tax due constituted a minuscule percentage of the market value of the property-the owner's interests must be balanced against the State's interest in collecting delinquent taxes, taking into account the status and conduct of the owner in determining whether notice was reasonable.") (emphasis added); Artis v. City of New York, 133 Misc.2d 629, 634, 509 N.Y.S.2d 734 (Civ. Ct. N.Y.City 1986) ("In rem tax foreclosures are an aid in collecting real estate taxes."); R. M. Investors Corp. v. Maggi, 104 Misc.2d 41, 48, 427 N.Y.S.2d 919 (County Court New York 1980) ("The purpose of the tax foreclosure statutes is to afford municipalities a practicable means to foreclose on tax liens and to collect delinquent taxes by the sale and delivery of marketable titles following foreclosure."); Application of Wolford, 130 N.Y.S.2d 250; N.Y. REAL PROPERTY TAX LAW ART. 11 (entitled "Procedures for Enforcement of Collection of Delinquent Taxes" and providing for foreclosure as a means of doings so); see also BLACK'S LAW DICTIONARY 674 (defining a foreclosure as a

"legal proceeding to terminate . . . [an] . . . interest in property, instituted . . . either to gain title or to force a sale in order to satisfy the unpaid debt. . . ." ).

As Plaintiff contends, the Supreme Court stated in Hibbs that the TIA was to prevent federal courts from exercising jurisdiction over cases where an individual is seeking to avoid paying taxes. Plaintiff argues that this case does not fall within the TIA because he is willing to pay his taxes. The plain language of the TIA, however, makes it clear that the Act applies to tax collection. Through this action, Plaintiff is asking this Court to interfere with the state's ability to collect taxes. Plaintiff is seeking to restrain the state from collecting taxes pursuant to the statutory scheme. Even if Plaintiff would willingly pay his back taxes and, thus, in theory, may not be preventing the state from ultimately collecting the tax, his time for payment is over. Pursuant to state law, the County is now permitted to foreclose on the property to enforce and collect the tax. Because Plaintiff is seeking to prevent the County from collecting the property tax pursuant to state law, this Court lacks jurisdiction. See Hibbs, 124 S. Ct. 2287 ("[T]he TIA shields state tax collections from federal court restraints.").

Plaintiff also relies on Ciocca v. Clinton County, 1999 U.S. Dist. LEXIS 22401. That case is factually similar to this one. In Ciocca, the plaintiff brought an action alleging that the county violated his due process rights by failing to notify him of a tax foreclosure in a manner that was reasonably calculated to apprise him of the foreclosure. 1999 U.S. Dist. Lexis 22401 at *1. It also appears that the plaintiff in that case attempted to pay at least a portion of the taxes owed. Relying on Wells, Judge Scullin concluded that:

> [The] plaintiff contends, and this Court agrees, that in this instance the
> Court is not being asked to "enjoin, suspend or restrain" the collection of
> a state tax because the defendant agrees that he owes taxes to the

> County and he is willing and able to pay the taxes. Rather than enjoining the collection of a tax, the Court is being asked to rule on the method of collection of the tax. The Second Circuit has found that a federal court has jurisdiction when plaintiff challenges the method of collection of a state tax but not the validity of the tax itself.

Id. at *5. This Court respectfully disagrees with the conclusion of the Ciocca case and its interpretation of Wells. As previously discussed, Wells did not insulate from the TIA all methods of tax collection. Such a holding would directly contradict the plain language of the TIA. By its own terms, Wells simply held that the suspension of a driver's license was too attenuated to the collection of a purchase and use tax to qualify as a "collection" under the TIA.

In Felton v. Icon Properties, 2004 U.S. Dist. LEXIS 21413, another case relied upon by Plaintiff, the City of New Orleans obtained title to the plaintiff's property for failure to pay back taxes. The City then sold the property to Icon Properties pursuant to the abandoned property laws ("Blight Busters program"). The plaintiff complained that he did not receive adequate notice of the City's intention to sell the property to Icon. In addressing the applicability of the TIA, the court held that "[a]lthough Plaintiff's property had been adjudicated to the City for non-payment of taxes, and although the Blight Busters program does apply to property adjudicated to the City for non-payment of taxes, Plaintiff is not challenging those tax assessments or his tax liability. Rather, he is challenging the City's ability to, consistent with principles of due process, sell his property without notice. It is simply not enough for purposes of the TIA that the Blight Busters program is related to a tax payer's failure to pay property tax." This Court's reading of Felton is that it is consistent with Wells. The plaintiff in Felton was not challenging the manner in which the City obtained title to the property in the first instance. Nor does it appear that the City sold the property in

satisfaction of the taxes owed to it.[1]  Rather, the City sold the property pursuant to an abandoned property law.  This sale, therefore, was too far removed from the tax collection process to fall within the TIA.[2]

There are numerous cases from within this Circuit finding actions such as the present one to be barred by the TIA.  For example, in <u>Schulz v. Williamson</u>, 145 Fed.Appx. 704 (2d Cir. 2005), the "Plaintiffs' complaint sought to enjoin defendants from enforcing state tax laws by adding their names to a list of delinquent taxpayers <u>or foreclosing on their real property</u>." (emphasis added).  The Second Circuit held that the district court correctly dismissed the action under the TIA.  <u>Id.</u>  In <u>MacNaughton v. Warren County</u>, 03-cv-1467 (Apr. 12, 2004), this Court was faced with a challenge to a county that foreclosed on a property and sold it to a third party.  The plaintiff in that case claimed that, in collecting property taxes and enforcing the tax foreclosure scheme, the defendant failed to give him constitutionally adequate notice.  This Court dismissed the action pursuant to the TIA.  <u>Id</u>.  On appeal, the Second Circuit affirmed the dismissal pursuant to the TIA.  <u>MacNaughton v. Warren County, New York</u>, 123 Fed. Appx. 425 (2d Cir. 2005).  Similarly, in <u>Finizie v. City of Bridgeport</u>, 880 F. Supp. 89, 91 (D. Conn 1995), the district court stated that "there is no question that the state foreclosure action constitutes the collection of a state tax."

The case of <u>Baechle v. Town of Mendon, Vt.</u>, 2005 WL 3334708 (D. Ct. 2005), involved a challenge to the Town of Mendon, Vermont's tax sale of Baechle's condominium to Charles Johnson, allegedly without reasonably diligent efforts to notify Baechle.  The

---

[1] It appears that tax sales under Louisiana law are governed by La. R.St. Title 47, Subtitle III, whereas in <u>Felton</u> the property was sold pursuant to La. R.St. § 33:4720.11.

[2] To the extent Felton's holding is broader than this Court has interpreted it, Felton is not binding and this Court declines to follow its reasoning.

district court concluded that the tax sale fell within the definition of tax "collection" within the meaning of the TIA. Id. at *3. The Baechle court distinguished Wells stating that "unlike the sanctions imposed in Wells . . ., the tax sale of [Baechle's] property falls within the Town's 'collection' power to directly produce money for payment of delinquent taxes." Id. The Baechle court also concluded that Ciocca misapplied Wells. Baechle, 2005 WL 3334708, at *3.

In Tupaz v, Clinton County, No. 05-cv-0606 (Jan. 9. 2006, bench decision), a case that is now on appeal, this Court held that a similar action is barred by the TIA. In an unreported decision, the Second Circuit expressly held that "[t]he Tax Injunction Act precludes the district court from interfering in local tax matters such as the foreclosure action." Andresakis v. State of Conn., 122 F.3d 1055, 1997 WL 383456, at *2 (2d Cir. 1997) (Table) (emphasis added). There was a similar result in Saglioccolo v. New York City Mun. Corp. Dept. of Finance Bureau of Tax, 101 F.3d 108 (2d Cir. 1996) (Table), wherein the Second Circuit stated that "[t]he Act applies equally to enforcement measures such as the in rem foreclosure challenged here."

Other courts have reached similar results. In Coon v. Teasdale, 567 F.2d 820 (8th Cir. 1977), for example, the plaintiffs sought injunctive relief to set aside the transfer of their real property at a tax foreclosure sale. Similar to this case, the plaintiffs sought to enjoin the enforcement of certain Missouri statutes and further sought a declaration that the statutes violate the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution by providing for the taking of property without proper notice to the property owner. The Eighth Circuit held that "§ 1341 provides a complete jurisdictional bar to plaintiffs' prayer for injunctive relief. The state statutes provide a method for collection of

state taxes and clearly fall within the scope of 28 U.S.C. § 1341." Id. at 822.  Similarly, in Ayers v. Polk County, Ga., 697 F.2d 1375, 1376 (11th Cir. 1983), the plaintiffs brought an action challenging their tax levy and tax sale of their property.  The Eleventh Circuit held that the district court lacked jurisdiction.  The Eleventh Circuit stated that:

> We see no merit in plaintiffs' contention that because the challenged activity here concerns tax collection practices rather than McNary 's tax assessment practices the comity principle should not apply. The overriding concern of McNary is respect for state revenue collection systems and that "the very maintenance of the [federal court] suit would intrude on the enforcement of the state [tax] scheme."

Id. (quoting Assessment in Real Estate v. McNary, 454 U.S. 100, 114, 102 S. Ct. 177 (1981));[3] see also Wright v. Pappas, 256 F.3d 635, 637 (7th Cir. 2001) ("A lien sale is a mode of tax collection; and so an action to enjoin it, or declare it illegal, or rescind it, or perhaps even just obtain damages on the ground of its illegality, would be barred by the Act or, in the case of the damages suit, by the free-standing principle of comity."); Dixon v. Oisten, 2002 WL 31008840 at *3-4 (E.D. Mich. 2002) ("[T]he language of the Tax Injunction Act and principles of comity bar plaintiff's lawsuit involving the tax sale of his properties and his attempts to regain them."), aff'd, Dixon v. Oisten, 62 Fed. Appx. 105 (6th Cir. 2003) ("The district court also properly noted that Dixon's challenge to the tax foreclosure on his real property was barred by the Tax Injunction Act."); Schulz v. Williamson, No. 1:04-cv-1375 (N.D.N.Y. Dec. 14, 2004) (Kahn, J.), aff'd, Schulz v. Williamson, 145 Fed. Appx. 704 (2d Cir. 2005); Wright v. Division of Finance, Collection Dept. Jackson County, Mo., 100 F.3d 960 (8th Cir. 1996) (Table); Pintozzi v. Scott, 436 F.2d 375 (7th Cir. 1970); U.S. v. Boyce, 153 F. Supp.2d 1194, 1996 (S.D. Cal. 2001) (TIA bars challenge to state tax liens).

---

[3] In Ayers, the Eleventh Circuit was applying the related principle of comity.

Based on the reasons discussed, and weight of authority cited above, the Court finds that the instant action is barred by the TIA and principles of comity.[4]

### b. Res Judicata

Although not specifically raised by Defendants, it also appears that Plaintiff's claims are barred by *res judicata*.[5] Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394, 398 n.4 (2d Cir. 2003) (district court may raise *res judicata* sua sponte). "Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Legnani v. Alitalia Linee Aeree Italiane, S.p.A., 400 F.3d 139, 141 (2d Cir. 2005) (quoting St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000)). "[T]he first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit . . . ." Id.

In this case, there was a foreclosure action against the property. After the judgment of foreclosure, Plaintiff moved to vacate the default judgment of foreclosure. During the course of that action, Plaintiff raised his constitutional claims regarding the adequacy of the notice provided to him by the County. In fact, Plaintiff initially succeeded in having the default judgment vacated on due process grounds. See In re Bouchard, 810

---

[4] Plaintiff does not argue that there is not a plain, speedy, and efficient remedy available in state court. In any event, the Second Circuit has squarely held in other cases that New York does provide a plain, speedy, and efficient remedy. Bernard v. Village of Spring Valley, 30 F.3d 294, 297 (2d Cir.1994) (holding Section 1983 action in state court was "plain, speedy and effective" remedy as required by Tax Injunction Act); see also Schulz, 145 Fed. Appx. 704; Hoffer v. Ancel, 32 Fed. Appx. 593 (2d Cir. 2002); Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428 (2d Cir. 1989).

[5] An argument also could be made that this Court does not have jurisdiction under the Rooker-Feldman doctrine. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15, 44 S. Ct. 149 (1923); see also Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005)..

N.Y.S.2d 565, 568 (3d Dep't 2006). The County then appealed to the Appellate Division, Third Department. The Appellate Division reversed the judgment of the County Court and held that Plaintiff's motion to vacate the default judgment was untimely. The Appellate Division further addressed Plaintiff's constitutional claims and expressly held that "we find that [the County's] use of certified mail to provide notice of the foreclosure action to respondent at his correct and only address listed on the Town's tax roles, combined with the fulfillment of the posting and publication requirements, satisfied the requirements of due process." Id at 568-69.

In this litigation, Plaintiff is raising identical claims challenging the constitutionality of the notice provided to him regarding the tax foreclosure proceeding. Plaintiff also raises claims concerning the constitutionality of N.Y. Real Property Law §§ 1125 and 1131. Plaintiff had a full and fair opportunity to raise all of his constitutional issues in state court; the claims in this case arise out of the same occurrences and transactions as the state court litigation; Plaintiff could have raised all the constitutional claims he now raises in the prior state court action;[6] Plaintiff had a full and fair opportunity to be heard on the constitutional issues he raised; and the state court rendered a decision denying his constitutional claims.[7] Plaintiff is, therefore, barred from relitigating those claims here. See Friarton Estates Corp. v. City of New York, 681 F.2d 150, 158-59 (2d Cir. 1982).

## III.   CONCLUSION

---

[6] Plaintiff clearly raised an issue in state court concerning whether Defendant was required to serve him with notice of entry of the default judgment of foreclosure. Matter of Bouchard, 810 N.Y.S.2d at 568. It is unclear why Plaintiff did not raise his constitutional claims with respect to this issue. Regardless of why Plaintiff did not raise this constitutional claim in state court, he certainly could have.

[7] These latter two points are more accurately addressed to the doctrine of *collateral estoppel*, which also would serve to preclude many of the issues raised by Plaintiff in this case.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and the Complaint is DISMISSED IN ITS ENTIRETY.  The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated: April 25, 2006

Thomas J. McAvoy
Senior, U.S. District Judge